CATES, Presiding Judge.
Assault with intent to ravish: sentence, five years imprisonment.
The evidence was in conflict. The verdict, while it cannot legally be labeled a compromise, certainly finds scant support in the testimony. The appellant was indicted for rape; the prosecutrix’s testimony was to that effect.
The appellant’s case, if it had been credited to the requisite degree, was that the Seventh Commandment to the contrary he partook consensually of fruit of the forbidden tree.
The jury, confronted with dire alternatives, chose a tertium quid — one which was permissible under at least one aspect of the State’s proof and for an offense embraced in the indictment for the capital crime of rape.
Under Rule 28(a)(7) ARAP Carrington’s counsel cites adverse rulings, to wit:
1. Admitting a hospital certificate in evidence to establish the birth before the sexual encounter — of a child by the prose-cutrix; the thrust was to head off an anticipated defense that he was the father and not the man named in the certificate;
2. Permitting claimed details of the prosecutrix’s complaint to be elicited; and
3. Prejudicial conduct, e. g., questioning and argument referring to Carring-ton’s criminal record and association with convicted felons.
I
The grounds of objection to the reception of the hospital’s certificate of birth were that the statutory certificate emanating from the State Health Department was sole and exclusive. Counsel cites Code 1940, T. 22, § 42, as amended.
However, under the peculiar — if not startling — mode of proof here employed by the prosecution, the court below had before it the best proof, i. e., the child’s mother as a witness. The hospital certificate, which was not self proving in this case, came into evidence, not by the viva voce examination of the hospital’s custodian of records, but by the testimony of the prosecutrix.
Certainly a mother, preeminently of all family members, is competent to testify as to the birth of her child even though circumstances might not allow her to be an eye-witness to its delivery. In this case the *503 paternity of the child was testified to by the prosecutrix. The introduction of the hospital certificate, whatever its infirmities under the rules of evidence, was harmless in this case.
II
The prosecutrix’s husband was in Detroit at the time in question. She told her father of the claimed rape. However, there was a delay. The State claimed the father was not available for a prompt “hue and cry.”
A prosecutrix’s delay in complaining of rape is a factor for the jury to consider as to the weight to be given to the woman’s testimony. Here, appellant asked for no instruction as to the fading force of a delayed complaint of rape.
We have examined the entire testimony claimed to have comprised a relation of details and find that no impermissible details were adduced before the jury.
III
The prosecutrix called the defendant “Mad Dog” which was also a name which the indictment ascribed to him by way of alias. Hence, it was within the legitimate bounds of argument for the District Attorney to use this appellation.
In a number of instances the trial judge sustained defense objections. One of the thorny points came from defense counsel’s motion to keep the prosecution from cross examining a proposed defense witness as to his conviction of a crime involving moral turpitude. In view of our statute expressly allowing this questioning, we agree the trial judge had no choice but to deny the motion, Wigmore to contrary notwithstanding.
The prosecutrix on the night in question went to the hospital where she requested treatment for lacerations to her mouth. She told the hospital staff present that she had fallen and hit a coffee table. This, she afterwards said, came from her fear of the defendant, who in truth she asserted was the author of her cut on the mouth and had threatened her.
In closing argument the District Attorney said, inter alia: [R. 95]
“She had fear in her heart, for all she knew, Mr. Mad Dog[1] was around, that Mr. Mad Dog was in and out of that emergency room wagging his tail, back and forth—
TOM RADNEY — We make a motion for a mistrial, * * *.”
Part of the repartee of counsel alluded to Mr. Mad Dog’s not having — at least under the evidence — any tail whatsoever.
No doubt some of this exchange revealed what Justice Merrill once characterized as “forensic nonsense.” Yet we have considered the entire record under Code 1940, T. 15, § 389. From this examination we conclude the judgment below — particularly in view of the verdict and light sentence — is to be
AFFIRMED.
All the Judges concur.

. Often ascribed as a nickname for Mogen David 20-20.